# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PENINA TAGOIA, ET AL.,**<br>Plaintiffs,<br>vs.<br>**WELLS FARGO BANK, N.A., ET AL.,**<br>Defendants. | CASE NO. 17-cv-06777-YGR<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; DISMISSING PLAINTIFFS' CLAIMS WITH PREJUDICE**<br><br>Re: Dkt. No. 70 |

Now before the Court is plaintiffs Penina Tagoia's and William Tagoia's[1] motion for leave to file a first amended complaint ("FAC") based on Federal Rule of Civil Procedure 60. (Dkt. No. 70 ("Motion").) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS IN PART** plaintiffs' motion and, having evaluated the merits of plaintiffs' remaining claims, **DISMISSES** the same **WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiffs brought the instant action against ten defendants in connection with the foreclosure of their former home.[2] In their initial complaint, plaintiffs asserted thirteen claims for relief generically against all defendants.[3]

---

[1] As the spelling of the name of one of the plaintiffs, again, remains inconsistent throughout plaintiffs' filings, the Court adopts the spelling as it appears on the caption page of plaintiffs' proposed FAC. (Dkt. No. 72-1 ("PFAC").)

[2] These defendants include: (1) Gregory L. Geiser and Breckenridge Property Fund 2016, LLC ("Breckenridge") (together, the "Breckenridge Defendants"); (2) Barrett Daffin Frappier Treder & Weiss, LLP ("BDFTW LLP"), Cheryl Lynn Asher, Erica Denise Jones, Edward Alan Treder, Manuel Loeza, Clayton Allen Goff, and Brandye N. Foreman (collectively, the "BDFTW Defendants"); and (3) Wells Fargo Bank, N.A. ("Wells Fargo").

[3] The claims for relief in the initial complaint were the following: (1) wrongful foreclosure; (2) promissory estoppel; (3) violation of California Civil Code ("Civil Code") section

The Breckenridge Defendants, the BDFTW Defendants, and Wells Fargo subsequently moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 12, 19, 58.) The Court granted the motions, dismissing the majority of plaintiffs' claims with prejudice. (*See generally* Dkt. No. 68 ("MTD Order").) The Court afforded plaintiffs leave to amend the following five claims, in the manner consistent with the Court's order: (1) wrongful foreclosure; (2) promissory estoppel; and violation of (3) Civil Code section 2923.7, (4) TILA, and (5) RESPA. (*See id*. at 16 (citing relevant portions of order).) Given the slapshot approach taken with respect to the initial complaint, the Court laid out the following process for any proposed amendment:

> The Court grants plaintiffs leave to file a ***motion*** to amend their complaint within the confines described herein. The motion . . . shall be drafted with the following components. First, a first amended complaint ("FAC") shall be attached as an exhibit to the motion, and must be structured in such a way as to address each remaining cause of action as it pertains to each specific defendant against which the cause of action is asserted. This will allow the Court to evaluate the merits of each claim with respect to each defendant. Second, the motion shall provide the legal justification for each cause of action (and therefore for each defendant against which the claim is asserted) separately. Third, for each cause of action, the motion shall (i) list the elements of the claim with supporting legal authority, and (ii) identify by page and line number the allegations in the FAC which correspond to and satisfy each element. Fourth, plaintiffs' counsel shall personally certify that all allegations presented in the FAC are made in good faith and in compliance with Federal Rule of Civil Procedure 11 and shall be prepared to respond to the Court in this regard if necessary. Plaintiffs may not add any additional claims without first seeking leave of Court separately.

(*Id*. at 16–17 (emphasis in original) (footnotes omitted).) With respect to the first component, the Court provided the following guidance: "For example, if plaintiffs assert a similar claim against two defendants, then plaintiffs' FAC shall assert *two separate causes of action*, one for each defendant." (*Id*. at 16 n.22 (emphasis in original).)

Plaintiffs' counsel did not heed the Court's instruction, as demonstrated by the instant

---

2924.11, (4) section 2923.7, and (5) section 2923.55; (6) slander of title; (7) violation of the Fair Debt Collection Practices Act ("FDCPA"), 18 U.S.C. § 1962; (8) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1692; (9) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; (10) violation of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605; (11) negligence; (12) violation of California Code of Civil Procedure section 1029.8; and (13) quiet title.

2

motion which followed and attached plaintiffs' proposed FAC.[4] In their proposed FAC, plaintiffs assert the following claims for relief: (1) wrongful foreclosure against Wells Fargo, BDFTW LLP, and the Breckenridge Defendants; and (2) promissory estoppel, (3) violation of Civil Code section 2923.7, and (4) violation of the TILA against Wells Fargo and Does 1 to 100.

## II. FACTUAL BACKGROUND

The following facts are based on the allegations of the proposed FAC and judicially noticeable documents:[5]

On or around July 31, 2006, plaintiffs obtained a $440,000 home loan (the "Loan") from World Savings Bank, FSB ("World Savings"). (PFAC ¶ 10.) The promissory note was secured by a Deed of Trust against the real property located at 4661 Palomino Way, Antioch, CA 94531 (the "Subject Property"). (*Id.* ¶ 2; BDRJN Exh. A ("DOT"), Dkt. No. 75-1.) Golden West Savings Association Service Co. was named as the Trustee on the Deed of Trust. (PFAC ¶ 11; DOT at 2.)

Plaintiffs allege that in May 2006, prior to their loan transaction, World Savings' assets were acquired by Wachovia, which securitized and sold plaintiffs' promissory note and beneficial interest in plaintiffs' DOT to a Real Estate Mortgage Investment Conduit trust entitled the "WSR24 trust." (PFAC ¶ 12.) Wells Fargo then acquired Wachovia and allegedly claimed a right

---

[4] On July 31, 2018, plaintiffs' counsel indicated that she would be "seek[ing] leave to amend to allege a cause of action for recovery" of purported "surplus funds from the trustee's sale" in the event such funds were "not immediately disbursed." (Dkt. No. 72 at 2.) As she never sought leave to amend in this regard, the Court deems the issue moot.

[5] In support of their opposition to plaintiffs' motion, the Breckenridge Defendants request that the Court take judicial notice of five documents that are publicly recorded in Contra Costa County. (*See* Defendants Breckenridge Property Fund 2016, LLC's and Gregory L. Geiser's Request for Judicial Notice ("BDRJN") at 2, Dkt. No. 75.) The Court previously took judicial notice of these documents in its MTD Order, (*see* MTD Order at 2 n.3), and finds judicial notice appropriate here for the same reasons as stated in that order. Accordingly, the Court **GRANTS** the Breckenridge Defendants' unopposed request to take judicial notice of these public records. The Court will afford them their proper evidentiary weight.

In addition, the Court previously took judicial notice of documents which were either (i) on file with the United States Bankruptcy Court, Northern District of California; (ii) public records on file with the Secretaries of State of Texas or California or the State Bar of California; or (iii) former sections of the California Civil Code. (*See id.*)

to foreclose on plaintiffs' property and authorized a foreclosure and trustee's sale to Breckenridge. (*Id*.) Plaintiffs allege that "[n]o assignments were recorded in favor of Wachovia or Wells Fargo relative to the Subject Property in Contra Costa County." (*Id*.)

In or around 2015, plaintiffs allege that Wells Fargo agreed to a loan modification providing for a term of seven to ten years for plaintiffs to repay the outstanding balance on the Loan, but this agreement was never recorded. (*Id*. ¶ 18.) Moreover, plaintiffs allege that Wells Fargo negligently performed its purported duty to assess properly plaintiffs' eligibility for a loan modification. (*Id*. ¶ 19.) Plaintiffs allege that Wells Fargo's modification determination was based upon an incorrect (inflated) monthly income amount, thus "depriv[ing] [p]laintiffs of an opportunity to pursue foreclosure avoidance options without having to file for bankruptcy . . . ." (*Id*.) Plaintiffs were allegedly "forced into bankruptcy as a result of this negligent modification application processing which negatively effected [*sic*] their credit and caused them to incur attorney's fees and court costs." (*Id*.)[6]

On February 10, 2016, Clayton Goff, associate attorney for BDFTW LLP, as attorney in fact for Wells Fargo, recorded a Substitution of Trustee, substituting BDFTW LLP as the Trustee under the Deed of Trust. (*Id*. ¶ 13; BDRJN Exh. B ("SOT"), Dkt. No. 75-2.) Plaintiffs allege that BDFTW LLP "never had any rights as an attorney in fact for Wells Fargo with respect to [p]laintiffs [*sic*] DOT and . . . that there was no attorney in fact agreement and that neither BDFTW LLP nor Wells Fargo had rights to record an SOT under the terms of the DOT." (PFAC ¶ 13.)

On March 2, 2016, Erica Denise Jones, associate attorney for BDFTW LLP, recorded a Notice of Default, which stated that plaintiffs were $90,587.63 behind on their Loan payments. (*Id*. ¶ 14; BDRJN Exh. C, Dkt. No. 75-3.) Plaintiffs allege that the Notice of Default is invalid because, in addition to being "executed by BDFTW LLP allegedly on behalf of Wells Fargo,"

---

[6] As the Court previously indicated based on judicially noticeable matters, plaintiffs filed two separate petitions for Chapter 13 Bankruptcy protection in connection with the Subject Property, one in 2013 (the "2013 Bankruptcy Action") and another in 2016 (the "2016 Bankruptcy Action"). (*See* MTD Order at 3 n.5.)

4

Wells Fargo did not apply Chapter 13 payments toward the Loan. (PFAC ¶ 18.) The inaccurate stated amount allegedly "materially interfered with their right of reinstatement." (*Id*. ¶ 14.) Further, plaintiffs allege, the Notice of Default directed them to contact BDFTW LLP, which they assert "did not legally exist in California," and they were never assigned a single point of contact ("SPOC") regarding their loan modification application. (*Id*. ¶ 22.)

On August 2, 2017, Manuel Loeza, foreclosure specialist for BDFTW LLP, recorded a Notice of Trustee's Sale with respect to the Subject Property, which announced a foreclosure sale date of September 6, 2017. (PFAC ¶ 15; BDRJN Exh. D ("NOTS"), Dkt. No. 75-4.) Plaintiffs allege that at the time the Notice of Trustee's Sale was recorded, they had been in regular contact with Wells Fargo and were notified that their loan modification application was under review and that a stay of sale was in effect. (PFAC ¶ 15.) In reliance on these representations, plaintiffs allege that they did not petition for emergency bankruptcy protection, post additional plan payments, initiate a lawsuit to seek emergency protection, or pursue other options for reinstatement. (*Id*.)

On September 6, 2017, BDFTW LLP conducted a trustee's sale "by and through" their agent, "unregistered partnership Barrett Daffin Frappier Treder & Weiss ('BDFTW')." (*Id*. ¶¶ 4, 16.) The Subject Property was "sold to Breckenridge for the bid amount of $495,000.00 with $545.05 Transfer Tax but in the name of BDFTW[,] a partnership not legally substituted as trustee for the Deed of Trust." (*Id*. ¶ 16.) Cheryl Asher, associate attorney for BDFTW (the purported partnership), recorded a Trustee's Deed Upon Sale on September 21, 2017, which conveyed the Subject Property to Breckenridge. (*Id*.; BDRJN Exh. E ("TDUS"), Dkt. No. 75-5.)

With respect to the foregoing, plaintiffs allege: "BDFTW was not a legally substituted trustee and [p]laintiffs are informed and believe and thereupon allege BDFTW LLP was not registered with the California State Bar at the time of the trustee's sale and lacked authorization to practice law as a business entity in California[,] which caused the SOT, NOD, [and] NOTS executed by and in favor of BDFTW LLP and the TDUS executed by BDFTW to be void." (PFAC ¶ 16.) With respect to Breckenridge, plaintiffs allege that it is not a good-faith purchaser in part because it, along with BDFTW, "engaged in pre-foreclosure negotiation with Wells Fargo

5

1  regarding scheduling the sale and terms of the sale[,] which grounds dictate a finding that the sale is illegal and Breckenridge is not a good faith purchaser and could not have received any legal interest under the TDUS recorded on September 21, 2017." (*Id.*)

Moreover, as the Court previously indicated based on judicially noticeable matters, the automatic stay in the 2016 Bankruptcy Action remained in place until July 3, 2017, when the bankruptcy court lifted the stay due to plaintiffs' failure to cure their post-petition default. (*See* MTD Order at 5.) Plaintiffs allege that they were not served the order granting relief from the automatic stay and thus were unaware that the stay was no longer in effect at the time the trustee's sale took place. (PFAC ¶ 17.) For this reason, they allege that they suffered a "secret sale." (*Id.*) The 2016 Bankruptcy Action was dismissed on November 7, 2017 based on plaintiffs' failure to make plan payments. (MTD Order at 5; *see also* PFAC ¶ 17.)

### III. THRESHOLD ISSUE: RELIEF IS UNAVAILABLE UNDER RULE 60

Plaintiffs seek to file a first amended complaint that does not comport with the requirements outlined in the Court's MTD Order. The Court articulated those requirements in light of plaintiffs' counsel's repeated failures to ignore well-established law in the context of foreclosure cases. In their motion, plaintiffs seek "relief from a judgment or order" under Federal Rule of Civil Procedure 60, presumably arguing that counsel should not have to comply with the Court's order and that relief would be proper "due to inadvertence and excusable neglect" of their counsel. (Dkt. No. 71 at 2.) Plaintiffs' reliance on Rule 60 has no application in this context.

First, the Court's requirements were unambiguous. Counsel's refusal to comply cannot be deemed anything other than intentional. Next, the Ninth Circuit has expressly held that "[n]either ignorance nor carelessness on the part of the litigant *or his attorney* provide grounds for relief under Rule 60(b)(1)." *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (emphasis supplied) (internal quotation marks omitted); *see also Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) ("[A]ttorney error is insufficient grounds for relief under both Rule 60(b)(1) and (6)[.]"). This is because "[a]s a general rule, parties are bound by the actions of their attorneys, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)." *Casey v. Albertson's*

6

*Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (rejecting the plaintiff's request for relief under Rule 60(b)(1) where the plaintiff asserted that her first attorney committed malpractice and her second attorney was inexperienced); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962) (explaining that a party who "voluntarily chose [his] attorney as his representative in the action . . . cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (internal quotation marks omitted).

Thus, the Ninth Circuit has found:

> Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel. For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims.

*Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006); *see also id.* at 1101–02 ("A party will not be released from a poor litigation decision made because of inaccurate information or advice, even if provided by an attorney.").

In light of this authority, the Court **DENIES** plaintiffs' motion to amend insofar as it is based on Rule 60. While the Court could deny the motion altogether solely based on plaintiffs' blatant failure to comply with the delineated process laid out in the Court's MTD Order,[7] the Court will nonetheless accept the proposed FAC and evaluate the merits thereof given the preference to address questions based on the merits and because Wells Fargo's and the Breckenridge Defendants' respective positions on the sufficiency of plaintiffs' proposed allegations are now before the Court.[8]

---

[7] *See* MTD Order at 17 n.23.

[8] While plaintiffs' compliance with the fourth condition spelled out in the Court's MTD Order is arguably a closer question given the language of Federal Rule of Civil Procedure 11, plaintiffs have blatantly failed to comply with the first three conditions. Indeed, they do not deny, let alone address, in their reply brief their noncompliance with the first three conditions. (*See*

7

## IV. LEGAL FRAMEWORK

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 556–57.

A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to a nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion to a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

In determining whether to grant leave to amend, a Court may consider whether the moving party has previously amended its complaint. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987). "Where a court has already provided the plaintiff one or more

---

*generally* Dkt. No. 79.)

1 opportunities to amend her complaint, its discretion over further amendments is particularly broad." *Dauth v. Convenience Retailers, LLC*, No. 13-047 MEJ, 2013 WL 4225587, at *2 (N.D. Cal. July 31, 2013) (citing *DCD Programs*, 833 F.2d at 186 n.3).

**V. DISCUSSION**

For purposes of this Order, the Court assumes familiarity with the arguments raised in the Breckenridge Defendants' and Well's Fargo's oppositions to plaintiffs' motion[9] and finds as follows:

**A. Alleged Wrongful Foreclosure Claim**

Plaintiffs' wrongful foreclosure claim against Wells Fargo, BDFTW, and the Breckenridge Defendants is **DISMISSED WITH PREJUDICE**. The Court understands the claim to be based on the following theories: (i) "BDFTW LLP was not registered with the California State Bar at the time of the trustee's sale and lacked authorization to practice law as a business entity in California" (PFAC ¶ 16); (ii) "BDFTW was not a legally substituted trustee" (*id.*); (iii) "BDFTW and Breckenridge . . . committed illegal acts to hold a sale and make a secret profit" (*id.* ¶ 30; *see also id.* ¶ 33); (iv) the Notice of Default is "false on grounds that it stated an incorrect amount in default" (*id.* ¶ 32); and (v) Breckenridge is not a "good faith" or "bona fide" purchaser (*id.* ¶ 39).[10] These theories are unavailing for several reasons.

First, the California State Bar "LLP Certificate of Registration 2017 Annual *Renewal*" of which the Court previously took judicial notice, (Dkt. No. 20 at ECF p. 44 (emphasis supplied)),

---

[9] Only the Breckenridge Defendants and Wells Fargo addressed the allegations of plaintiffs' proposed FAC. BDFTW LLP, on the other hand, focused its opposition on plaintiffs' failure to follow the four conditions detailed in the Court's MTD Order and stated that it would "address its procedural, legal[,] and factual challenges to the allegations of the FAC" only if the Court were to grant the instant motion. (Dkt. No. 73 at 3.)

[10] As the Court noted in its MTD Order, "[g]iven plaintiffs' 'fail[ure] to demonstrate that the property foreclosure was void or unauthorized,' plaintiffs must indicate in their amended complaint, to the extent one is filed, 'a credible, legitimate tender of or ability to tender amounts outstanding.'" (MTD Order at 11 n.16 (quoting *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1107 (E.D. Cal. 2014).) Plaintiffs' failure to indicate "a credible, legitimate tender of or ability to tender amounts outstanding" is construed as a concession of their inability to do so. Moreover, the cases they cite addressing the tender requirement if the sale is void are irrelevant, (*see* PFAC ¶ 23), as the Court rejects the notion that the sale here was void. Thus, plaintiffs cannot "maintain any cause of action for irregularity in the sale procedure." *Flores*, 997 F. Supp. 2d at 1106.

*on its face* indicates that BDFTW LLP *previously* registered as an LLP with the California State Bar, and at least as early as 2016. In other words, BDFTW LLP was not registering for the first time in 2017, as plaintiffs contend, but instead was *renewing* its registration.[11] Second, as the Court previously noted in ruling on plaintiffs' renewed motion for a temporary restraining order, (*see* Dkt. Nos. 50, 56), plaintiffs' contention that BDFTW (the purported "unregistered partnership") was not a legally substituted trustee hinges on a technicality, namely that the Trustee's Deed Upon Sale is invalid because of the missing "LLP" designation in the signatory block. (*See also* PFAC ¶ 35 ("BDFTW LLP did not execute and record the TDUS."); *id*. ¶ 37 ("BDFTW . . . would necessarily be a distinct business entity from BDFTW LLP . . . .").) Third, as the Court previously noted in its MTD Order, plaintiffs' allegation that Breckenridge and BDFTW illegally partnered for a "secret profit" is not supported by any plausible factual allegations and amounts to nothing more than speculation. (*See* MTD Order at 10 n.16.) Fourth, the Notice of Default "need not . . . state the amounts which are in default; it need only describe the nature of the breach." *Middlebrook-Anderson Co. v. Sw. Sav. & Loan Ass'n*, 18 Cal. App. 3d 1023, 1038 (1971) (citing Civil Code section 2924). Consequently, the Notice of Default is neither statutorily deficient nor invalid.[12] Fifth, plaintiffs' theory that Breckenridge is not a "bona

---

[11] In any event, as the Court noted in its MTD Order, plaintiffs' allegations and the judicially noticeable documents establish that the foreclosure proceeding against the Subject Property was a non-judicial foreclosure proceeding, and thus BDFTW LLP was merely performing the ministerial duties of a foreclosure trustee as opposed to practicing law. Therefore, plaintiffs' allegations of illegal activity and/or unlawful practice of law by BDFTW LLP are irrelevant. (*See* MTD Order at 10 n.12.)

[12] Moreover, assuming the amount listed in the Notice of Default was in fact incorrect, plaintiffs allege no resulting prejudice. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011) ("[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests."), *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016). Plaintiffs do not deny that they defaulted on the Loan, nor do they allege that they could or would have cured the default by paying the lesser amount they believed was correct.

In any event, as the Court noted in its MTD Order, "plaintiffs' contention that Wells Fargo failed to apply their Chapter 13 bankruptcy payments toward the Loan is contradicted by judicially noticeable orders entered in plaintiffs' 2013 Bankruptcy Action and by plaintiffs' proposed Chapter 13 plan filed on September 9, 2016." (MTD Order at 10 (footnote omitted).)

10

fide" or "good faith" purchaser is essentially based on the notion that "the deed on which the transfer is based[] is void,"[13] and the Court previously dismissed with prejudice plaintiffs' claims against the Breckenridge Defendants to the extent they relied on the same. (*See* MTD order at 10).[14]

### B. Alleged Promissory Estoppel Claim

Plaintiffs' promissory estoppel claim against Wells Fargo and Does 1-100 is **DISMISSED WITH PREJUDICE**. While plaintiffs have provided more factual detail, and plaintiffs' counsel indicates a potential ability to further amend the complaint to specify who made the alleged promises, (*see* Dkt. No. 80 at 3), plaintiffs have disregarded the Court's clear instruction to specify

---

[13] *See* PFAC at ¶ 39 ("[T]he sale is illegal and Breckenridge is not a good faith purchaser and could not have received any legal interest under the TDUS recorded on September 21, 2017."); *see also* Dkt. 79 at 4 ("Plaintiffs also argue that material mistakes occurred in the holding of the trustee's sale and execution of the Trustee's Deed Upon Sale due to the mish mash of law firms and partnerships purporting to be the trustee, such that the sale was void and there could be no bona fide purchaser.").

[14] To the extent plaintiffs' wrongful foreclosure claim as asserted against Wells Fargo is based on purported "fraud in the origination of the loan," (PFAC ¶ 32), that claim fails. "[The Home Owners' Loan Act ('HOLA'), 12 U.S.C. § 1461, *et seq*.,] preempt[s] causes of action for wrongful foreclosure when the conduct complained of occurred at the time of origination." *Pimentel v. Wells Fargo, N.A.*, No. 14-cv-05004-EDL, 2015 WL 2184305, at * 5 (N.D. Cal. May 7, 2015); *see also, e.g., Robateau v. Wells Fargo Home Mortg.*, No. CV 15-504-R, 2015 WL 12765587, at *2 (C.D. Cal. May 7, 2015) ("Here, Plaintiff's loan origination-based fraud and misrepresentation claims appear to be based on allegations that Defendant's predecessor, World Savings Bank, failed to adequately disclose various loan terms and improperly placed Plaintiff in an unaffordable loan. . . . These . . . claims, which challenge alleged deficiencies in the origination process . . . are specifically preempted by HOLA.").

In addition, plaintiffs complain that they were not "serve[d] legal notices," (PFAC ¶ 32), namely the bankruptcy court's order granting relief from automatic stay in the 2016 Bankruptcy Action. (*Id*. ¶ 17). However, as noted in the Court's MTD Order, plaintiffs obtained representation of a bankruptcy lawyer to obtain the Chapter 13 plan. (PFAC ¶ 18.) Under this district's Bankruptcy Local Rules, "transmission of the Notification of Electronic Filing by the Clerk to a Registered Participant who has consented to electronic service shall constitute effective service on that Registered Participant of all papers governed by [Federal Rule of Civil Procedure 5(b)] . . . ." Bankr. L.R. 9013-3(c). Moreover, "[u]nless exempted by the Clerk, all attorneys practicing in the Court . . . are required to file all documents . . . electronically via ECF." *Id*. L.R. 5005-1(c). Plaintiffs do not allege their attorney in the 2016 Bankruptcy Action opted out of Electronic Filing or was exempted from it by the Clerk.

The Court does not address here other "statutory violations" on which plaintiffs' wrongful foreclosure claim is based because it dismisses below plaintiffs' claims for other California and federal violations. (PFAC ¶ 32.)

11

how they could have detrimentally relied on the alleged promises "particularly in light of plaintiffs' judicially noticeable stipulation with Wells Fargo, entered as an order of the bankruptcy court on March 13, 2017 in the 2016 Bankruptcy Action . . . ." (MTD Order at 11.)[15] The Court construes plaintiffs' failure on amendment to comply with this instruction as a tacit admission that they cannot.

### C. Alleged Violation of Civil Code Section 2923.7

Plaintiffs claim against Wells Fargo for violation of Civil Code section 2923.7 is **DISMISSED WITH PREJUDICE**. The Court previously afforded plaintiffs leave to amend "so that [they] may allege . . . that they requested a SPOC and plead facts sufficient to demonstrate that any purported failure to assign a SPOC caused plaintiffs economic damages." (MTD Order at 12.) While plaintiffs have bolstered their allegations with respect to economic damages and added allegations supporting the materiality of the purported violation,[16] they still do not allege that they requested a SPOC. *See Galvez v. Wells Fargo Bank, N.A.*, No. 17-cv-06003-JSC, 2018 WL 2761917, at \*7 (N.D. Cal. June 7, 2018) ("[Section 2923.7] only applies when borrowers request a single point of contact. If the loan modification process automatically triggered a single point of contact requirement, there would be no need to condition the requirement on a 'request from the borrower.'"); *Williams v. Wells Fargo Bank, NA*, No. EDCV 13-02075 JVS (DTBx), 2014 WL 1568857, at \*8 (C.D. Cal. Jan. 27, 2014) ("[T]he text of section 2923.7 requires that the borrower make a specific request for a single point of contact.").[17] Again, the Court construes plaintiffs'

---

[15] Specifically, plaintiffs and Wells Fargo jointly stipulated to a payment plan on March 13, 2017, in which plaintiffs would make payments to cure their default.

[16] "[A] violation of § 2923.7 is actionable only when that violation is material. A material violation is one where the alleged violation affected a plaintiff's loan obligations or the modification process." *Stewart v. Am. Gen. Fin., Inc.*, 2:18-cv-01844 KJM CKD (PS), 2018 WL 5793459, at \*5 (E.D. Cal. Nov. 2, 2018) (internal quotation marks omitted).

[17] As the Court previously stated in its MTD Order, to the extent plaintiffs complain that they were directed to contact a group of individuals rather than a single individual, section 2923.7(e) permits a "single point of contact" to include a group of individuals. Simply having multiple people help plaintiffs does not give rise to a cause of action under section 2923.7. *See Taitano v. Wells Fargo Bank, N.A.*, No. 18-cv-03924-NC, 2018 WL 5849005, at \*5 (N.D. Cal. Nov. 5, 2018) ("Even if the Court assumes that Plaintiffs made such a request, § 2923.7(e) permits mortgage servicers to assign a 'team of personnel' as the single point of contact.") As for plaintiffs' assertion that "a single point of contact was never available to speak with [p]laintiffs"

12

1  failure on amendment to comply with the Court's instruction as a tacit admission that they cannot.

### D. Alleged Violation of the Truth in Lending Act

Plaintiffs' TILA claim against Wells Fargo is **DISMISSED WITH PREJUDICE**. First, plaintiffs assert that "[d]efendants' failure to effectively provide the required disclosures and notices, including but not limited to [d]efendants [*sic*] failure to provide disclosures regarding payment schedules and terms and violations of prohibitions regarding high-rate, high-fee loans, and assignment of ownership interest in [p]laintiffs' loan" tolls any relevant statutes of limitations. (PFAC ¶ 63.) However, this claim misstates the law. As the Court explained in its MTD Order, "'the mere existence of TILA violations does not support equitable tolling of TILA's statute of limitations.'" (MTD Order at 14 (quoting *Quach v. Bank of Am., N.A.*, 5:13-CV-00467-EJD, 2013 WL 3788827, at *3 (N.D. Cal. July 17, 2013)).) Rather, "[e]quitable tolling is generally applied in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *O'Donnell v. Vencor Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (internal quotation marks omitted). The proposed FAC contains no allegations that plaintiffs pursued judicial remedies during the statutory period or that Wells Fargo tricked them into allowing the filing deadline to pass.

Second, while plaintiffs allege that they "were never advised that they had an option for civil litigation in regard to predatory lending until after the trustee's sale[,]" (PFAC ¶ 61), ignorance of the law until informed by counsel does not support equitable tolling of TILA's statute

---

(Compl. ¶ 55), the Court again notes that this argument is contradicted by other allegations in the complaint. *See, e.g., id.* ¶ 15 ("Plaintiffs were in regular telephone contact with Wells Fargo . . . ."); *see also Saber v. J.P. Morgan Chase Bank, N.A.*, 650 F. App'x 527, 528 (9th Cir. 2016) ("[Appellant] has not plausibly alleged that he was not given a single point of contact because he alleges in relation to [another] claim that he was in contact with J.P. Morgan regarding a loan modification and that J.P. Morgan responded to that inquiry.").

Moreover, as a single point of contact is merely an individual or group of individuals with whom a borrower can communicate about foreclosure prevention, *see* Cal. Civ. Code § 29237.7(a), plaintiffs' allegation that they "did not know what a single point of contact was," (FAC ¶ 51), is unpersuasive and does not excuse them from their obligation to plead that they requested a SPOC.

13

of limitations. *See Valdez v. America's Wholesale Lender*, No. C 09-02778 JF (RS), 2009 WL 5114305, at *6 (N.D. Cal. Dec. 18, 2009) ("If the Court were to accept the FAC's allegations of ignorance of the law until informed by counsel as sufficient for a pleading of equitable tolling, every plaintiff could assert the same allegation, and TILA's statute of limitations provision would have no real meaning."); *Nguyen v. Countrywide Home Loans, Inc.*, No. SACV 08-0830-CJC(PJWx), 2009 WL 10687718, at *2 (C.D. Cal. Sept. 8, 2009) ("The fact that [plaintiff] did not discover the violation until he consulted with an attorney does not toll the statute of limitations. . . . Ignorance of the law is not an excuse for inaction.") Third, while plaintiffs allege that "[they] are Samoan, and do not speak and read English as easily as persons for whom English is their first language[,]" (PFAC ¶ 61), "[t]he fact that a party does not speak English as a first language is not a basis for equitable tolling under TILA." *Pineda v. Wash. Mut. Bank, FA*, No. C 10-02494 CRB, 2011 WL 249486, at *4 (N.D. Cal. Jan. 25, 2011); *see also Gomez v. Wachovia Mortg. Corp.*, No. CV-09-02111 SBA, 2010 WL 291817, at *4 (N.D. Cal. Jan. 19, 2010) (finding that doctrine of equitable tolling did not apply to TILA damages claim even though documents were not provided in plaintiff's native Spanish because she did not allege "any facts or circumstances that served to prevent her—in the exercise of all due diligence—from having the documents translated into Spanish or having a third party review the documents for her"). Fourth, plaintiffs' allegation that they did not exercise due diligence because "[t]heir bank statements for their loan also warned them not to call around for foreclosure avoidance assistance due to scams and so [p]laintiffs were also afraid . . . and believed . . . that they did not have other legal options beside filing for bankruptcy," (PFAC ¶ 61), similarly fails for the simple reason that it does not take into account the exercise of "all due diligence." *Gomez*, 2010 WL 291817, at *4.[18]

## VI. CONCLUSION

In light of the nature of plaintiffs' allegations and arguments, and the procedural and substantive nature of the defects addressed above, the Court finds that granting further leave to

---

[18] *See also McQuinn v. Bank. of Am., N.A.*, 656 F. App'x 848, 849 (9th Cir. 2016) (stressing that "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control make it *impossible* to file a claim on time.") (emphasis supplied).

14

amend would be futile in this case. *See Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1088 (9th Cir. 2002) (finding that "there [was] no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the underlying facts as alleged could not be cured by amendment); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

Accordingly, for the foregoing reasons, the Court **GRANTS IN PART** plaintiffs' motion for leave to file a first amended complaint and **FINDS** plaintiffs' claims for wrongful foreclosure, promissory estoppel, violation of Civil Code section 2923.7, and violation of the TILA to be without merit and further amendment to be futile. Thus, these claims are **DISMISSED WITH PREJUDICE**.

The Clerk shall close the case file. This Order terminates Docket Number 70.

**IT IS SO ORDERED.**

Dated: January 7, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**